## S08Q1846. FEDERAL HOME LOAN MORTGAGE CORPORATION v. CITY OF ATLANTA.

(674 SE2d 905)

BENHAM, Justice.

The United States District Court for the Northern District of Georgia has certified two questions of Georgia law to this Court pursuant to Georgia constitutional and statutory authorization and the rules of this Court. 1983 Ga. Const., Art. VI, Sec. VI, Par. IV; OCGA § 15-2-9 (a); Rule 46 of the Rules of the Supreme Court of Georgia. The questions arise in a declaratory judgment action filed in the federal district court. We have been asked to determine whether the City of Atlanta's ordinance concerning action that may be taken when charges for water and sewer service are not paid is inconsistent with and thus pre-empted by OCGA § 36-60-17.[1] We have also been asked to determine whether OCGA § 36-60-17 prohibits a municipality from retaining, as well as imposing, a lien on residential property to secure unpaid charges for water service to the residential property when the property is no longer owned by the person who incurred the charges.

In May 2007, the Federal Home Loan Mortgage Corporation ("Freddie Mac") filed a complaint in federal district court for declaratory and injunctive relief against the City of Atlanta ("the City") with regard to the supply of water services to a certain piece of improved real property[2] located in the City of Atlanta. Freddie Mac holds an interest in the property by means of a special warranty deed executed by Wells Fargo Bank which had purchased the property at a foreclosure sale after Harold Singer, Jr., defaulted on his promissory note to Wells Fargo, which note was secured by a deed to secure

---

[1] OCGA § 36-60-17 provides:

(a) No public or private water supplier shall refuse to supply water to any single or multifamily residential property to which water has been furnished through the use of a separate water meter for each residential unit on application of the owner or new resident tenant of the premises because of the indebtedness of a prior owner, prior occupant, or prior lessee to the water supplier for water previously furnished to such premises.

(b) For each new or current account to supply water to any premises or property, the public or private water supplier shall maintain a record of identifying information on the user of the water service and shall seek reimbursement of unpaid charges for water service furnished initially from the person who incurred the charges.

(c) A public or private water supplier shall not impose a lien against real property to secure unpaid charges for water furnished unless the owner of such real property is the person who incurred the charges.

(d) A public or private supplier of gas, sewerage service, or electricity shall not impose a lien against real property to secure unpaid charges for gas, sewerage service, or electricity unless the owner of such real property is the person who incurred the charges.

[2] The improvement is a single-family residence.

debt executed by Singer in favor of Wells Fargo. After Freddie Mac obtained Wells Fargo's interest in the property, Freddie Mac learned from the City of Atlanta that Singer had incurred an outstanding water bill on the property of $11,117.90 and that the unpaid bill constituted a lien on the property. Unable to convey clear, marketable title to the property because it could obtain only a policy of title insurance on the property that specifically excepted the City's claim, Freddie Mac filed its complaint in which it sought a declaration that the Singer water bill was unenforceable against the purchaser at the foreclosure sale; that the water bill did not constitute a lien on the property; that the City did not have the authority to refuse to provide water service to the property following the sale of the property at the foreclosure sale; and that the City's policy to refuse water service until the new owner of the property paid the sums incurred by the former property owner violated OCGA § 36-60-17. The questions presented being questions of state law and the answers being determinative of the matter pending in federal court, the district court certified the questions to this Court.

1. The uniformity clause of the Georgia Constitution provides:

Laws of a general nature shall have uniform operation throughout this state and no local or special law shall be enacted in any case for which provision has been made by an existing general law, except that the General Assembly may by general law authorize local governments by local ordinance or resolution to exercise police powers which do not conflict with general laws.

1983 Ga. Const., Art. III, Sec. VI, Par. IV (a). This clause precludes a local or special law when a general law exists on the same subject, with an exception where the legislature has authorized local governments to act pursuant to police powers and the resulting local ordinance does not conflict with the general law. *Franklin County v. Fieldale Farms Corp.*, 270 Ga. 272 (2) (507 SE2d 460) (1998). See also *Pawnmart, Inc. v. Gwinnett County*, 279 Ga. 19 (608 SE2d 639) (2005) (local ordinance imposing certain requirements on pawnbrokers not preempted by state law).

Section 154-120 (1) of the City's ordinances provides:

Upon the failure of any person to: (i) Pay any water bill . . . or charge against any premises for which the person is responsible . . . ; or (ii) to send a written notice of dispute . . . , the person will be sent a notice that their service will be terminated without further notice and the commis-

sioner . . . [is] authorized to turn off and discontinue water service to the person and premises until the bill or charge is paid. . . . Subject to OCGA § 36-60-17, the delinquent bill or charge shall be a lien on the property where the bill or charge was incurred. . . .

Generally, OCGA § 36-60-17 (a) prohibits a water supplier from refusing to supply water to a water meter because of the indebtedness of a prior owner, occupant, or lessee of the residence served by that meter. Subsection (b) requires water suppliers to keep records on the user of water service and seek reimbursement of unpaid charges initially from the person who incurred the charges. In subsection (c), a water supplier is prohibited from imposing a lien against real property to secure unpaid charges for water furnished unless the owner of the real property is the person who incurred the charges; in subsection (d), suppliers of gas, sewerage service, or electricity are similarly limited in their ability to impose a lien against real property to secure unpaid charges for services. To the extent the city ordinance authorizes the water supplier to discontinue service to the single-family residence served by its own meter until the water supplier receives payment for unpaid water charges incurred by a former owner, occupant, or lessee of the property, the city ordinance is in conflict with and is pre-empted by subsection (a) of OCGA § 36-60-17. Accordingly, the City, as water supplier, cannot refuse to supply water to the premises at issue until it receives payment of the water bill arrearage incurred by a former owner.

2. Freddie Mac maintains that the City ordinance is also in conflict with and preempted by subsection (c) of OCGA § 36-60-17. Subsection (c) prohibits a water supplier from imposing a lien against real property to secure payment for unpaid water charges incurred by anyone other than the owner of the property. The city ordinance says the delinquent water bill or charge becomes a lien on the property where the bill or charge was incurred, subject to OCGA § 36-60-17.

Prior to the enactment of OCGA § 36-60-17 in 1994, this Court sanctioned the imposition of a lien on real property to secure payment of unpaid bills for water supplied to the property where a city charter or local ordinance authorized the water supplier to shut off water to the property for failure to pay the water bill and required that the water service not be restored until the arrears were fully paid. *City of Atlanta v. Burton*, 90 Ga. 486, 489 (16 SE 214) (1892). The bill for water supplied to the premises was "a charge upon the property to which the water was conveyed" and gave the water supplier the right "to enforce payment for water furnished by making the amount due for it a charge on the property supplied with

it." 90 Ga. at 489. The Court saw the water supplier's right of enforcement as "somewhat analogous to a lien for taxes, which attaches to the property itself, and for the payment of which the property is subject. . . ." Id. See also *Dodd v. City of Atlanta*, 154 Ga. 33, 39 (113 SE 166) (1922) (noting the city's ability to enforce the collection of costs related to water service by execution, levy and sale of the property served). In *Bowery Savings Bank v. DeKalb County*, 240 Ga. 528, 530-531 (242 SE2d 50) (1978), this Court viewed the creation of such a lien as the exercise of the police power and ruled that liens for unpaid water charges "have the same priority as liens for ad valorem taxes" and "were not extinguished by the banks' foreclosures of their security deeds. . . ." Liens for all taxes due the state or any county or municipality "arise as of the time the taxes become due and unpaid and all tax liens shall cover all property in which the taxpayer has any interest from the date the lien arises until such taxes are paid." OCGA § 48-2-56 (a). Taxes are paid "before any other debt, lien, or claim of any kind." OCGA § 48-5-28 (a). As a result, the water lien, like the lien for ad valorem taxes, was deemed to arise when the water bill was due and unpaid, covered the property where the water bill was in arrears, and was exempt from the general notice and recording provisions of OCGA §§ 44-2-1 and 44-2-2.[3] See *Atlanta Title & Trust Co. v. Inman*, 42 Ga. App. 191 (155 SE 364) (1930) (lien for tax imposed by municipality attached to property despite not having been recorded in superior court clerk's office).

Because of the heightened status given the water lien, Georgia appellate courts ruled that unpaid water charges incurred by a previous owner or occupant survived foreclosure and became the obligation of the lender which foreclosed upon the delinquent owner. See *Bowery Savings Bank v. DeKalb County*, supra, 240 Ga. at 530; *Druid Assoc., Ltd. v. National Income Realty Trust*, 210 Ga. App. 684 (436 SE2d 721) (1993).[4] Six months after the decision of the Court of

---

[3] OCGA § 44-2-1 requires every deed conveying lands to be recorded in the office of the clerk of superior court of the county in which the land is located, and sets out the priority of deeds ("a prior unrecorded deed loses its priority over a subsequent recorded deed from the same vendor when the purchaser takes such deed without notice of the existence of the prior deed"). OCGA § 44-2-2 requires the clerk of superior court to keep a docket for the filing for record of deeds, mortgages, and liens of all kinds.

[4] See also *Union Circulation Co. v. Russell*, 463 FSupp. 884 (N.D. Ga. 1978) (county ordinance authorizing withholding of water services from landlord's property where former tenant had incurred delinquent water bills does not violate due process of law or equal protection where there is an ordinance that expressly creates liens on property at which there is an unpaid water bill). Cf. *Chatham v. Jackson*, 613 F2d 73 (5th Cir. 1980) (in light of holding in *Bowery Savings Bank* concerning the priority of lien based on unpaid water bill, an ordinance authorizing withholding of water services until delinquent bill satisfied is not an unconstitutional "taking," and does not violate due process and equal protection).

Appeals in *Druid Associates* holding that the foreclosing holder of a deed to secure debt was responsible for the delinquent water charges incurred by the tenant of the property owner suffering foreclosure, the General Assembly enacted OCGA § 36-60-17 to end the practice of imposing a lien against real property to secure payment of unpaid water charges unless the water charges had been incurred by the owner of the property, and to end the practice of water suppliers refusing to supply water to certain residential property because of the indebtedness of a prior owner, occupant, or lessee.[5]

OCGA § 36-60-17 embodies a limited legislative modification of the judicially-created policy that permitted delinquent water bills, regardless of who incurred the charges, to serve as the basis for the imposition of a lien of heightened status on the real property at which the bills were incurred. Through enactment of OCGA § 36-60-17 (c), the General Assembly statutorily overruled the case law authorizing imposition of a "heightened-status" lien for unpaid water charges incurred by a former non-owner occupant. Where, however, unpaid water charges were incurred by an owner of the property, the judicial doctrine permitting the imposition of a "heightened-status" lien on the owner's residential property where the unpaid charges were incurred remains in place. Inasmuch as the city's ordinance expressly recognizes that its ability to impose a lien on real property on the basis of unpaid water bills for service to that property is limited by OCGA § 36-60-17, we conclude that the city's ordinance is not in conflict with subsection (c) of OCGA § 36-60-17.

3. In light of the discussion above, we answer the second question posed by the federal district court by stating our conclusion that OCGA § 36-60-17 does not prevent a water lien from arising when the owner of real property accrues unpaid water bills for water charges incurred by the property owner, and OCGA § 36-60-17 does not affect the heightened status said water lien enjoys.

In summary, we conclude that Section 154-120 (1) of the Code of Ordinances of the City of Atlanta, to the extent it allows the water supplier to refuse service to an applicant for service at a residential property at which each residential unit is served by a separate meter on the ground that there exists an indebtedness for water service incurred by a prior owner, occupant or lessee, is inconsistent with and pre-empted by OCGA § 36-60-17 (a). Section 154-120 (1) is not inconsistent with OCGA § 36-60-17 (c) since the ordinance recognizes the water supplier's ability to impose a lien for non-payment of

---

[5] The latter action of the General Assembly was limited to water service to residential single-family and multi-family property where water is furnished through the use of a separate water meter for each residential unit.

water charges is limited to instances where the owner incurred the indebtedness. Stated another way, OCGA § 36-60-17 does not prevent a water lien from arising when the owner of real property accrues unpaid water bills for water charges incurred by the property owner, and OCGA § 36-60-17 does not affect the heightened status said water lien enjoys.

*Questions answered. All the Justices concur.*

DECIDED MARCH 23, 2009.

*Baker, Donelson, Bearman & Caldwell, Dylan W. Howard, Linda S. Finley,* for appellant.

*Laura Sauriol, Mavis T. Stewart, Elizabeth B. Chandler, Renee M. Shepherd, Lemuel H. Ward,* for appellee.